IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRENDA LEE KLEVEN,

                             OPINION AND ORDER

                Plaintiff,

                           15-cv-124-bbc

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Brenda Lee Kleven brought this suit seeking judicial review of a final administrative decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, finding plaintiff no longer disabled as of September 1, 2011. Earlier, in November 2007, plaintiff had been found medically disabled as of March 8, 2006, that is, incapable of substantial gainful activity, because she was recovering from surgery for thoracic spine compression fractures incurred in a motor vehicle accident. In 2011, an administrative law judge concluded that plaintiff had recovered sufficiently to hold a job at a sedentary level, with limitations. Plaintiff takes issue with the decision, contending that the administrative law judge erred in three ways: (1) by not giving proper weight to the statements of her treating physician; (2) by providing a flawed credibility assessment that did not give adequate consideration to plaintiff's pain; and (3) by failing to consider her non-severe impairments, as required by law.

1

I conclude that plaintiff has failed to establish any error by the administrative law judge. He followed the eight-step analysis of plaintiff's claim, as he is required to do in cases like plaintiff's. 20 C.F.R. § 404.1594. Contrary to plaintiff's claim, he did not make the errors she identified. He had good reasons for giving only *some* weight to the opinions of her treating physician, when those opinions were not backed up by medically acceptable clinical and laboratory diagnostic techniques. He had ample support for his finding that plaintiff was not wholly credible, in light of her own conflicting statements and the observations of the consulting physician. Finally, he explained why he did not give more weight to plaintiff's non-severe impairments, such as her mild impairment of concentration, persistence and pace and her depression. Accordingly, the administrative law judge's decision will be affirmed.

RECORD FACTS

A. Background

Plaintiff Brenda Lee Kleven was born on November 26, 1965. In March 2006, she was injured in an automobile accident. The Social Security Administration found her disabled as of March 8, 2006, as a result of thoracic spine compression fractures that prevented her from performing even sedentary work. AR 17. Later she was found to be medically improved as of September 1, 2011 and no longer eligible for disability benefits. Since that time, she has not engaged in substantial gainful activity. Id.

Plaintiff was given a disability hearing before a state agency Disability Hearing

Officer, who upheld the determination of non-disability.  She filed a timely written request for a hearing before an administrative law judge; the request was granted and the hearing held on December 5, 2013.  On January 9, 2013, the administrative law judge issued his decision, finding that plaintiff's disability had ended as of September 1, 2011.  After the Appeals Council upheld the decision, AR 1-2, plaintiff filed this lawsuit, seeking judicial review of the adverse decision.

## B. Medical Record

### 1. Treating physicians

In March 2006, plaintiff was injured in an automobile accident.  She was taken to a hospital, where doctors diagnosed a T9 compression fracture.  AR 458.  In September 2006, a physician at the Mayo spine clinic, Dr. Sean Pittock, identified a T7-8 thoracic compound fracture, secondary kyphotic deformity (exaggerated rounding of the back, **www.mayoclinic.org/diseases-conditions/kyphosis/basics/** visited Dec. 1, 2015),  and back pain, right upper extremity pain of unknown etiology and intermittent left leg fatigue and weakness of unknown cause.  AR 396-97.  On March 26, 2007, plaintiff underwent surgery at the University of Wisconsin Hospitals for removal of part of the vertebral body (a T8 corpectomy), reconstruction of her spine from T7 to T9, insertion of  hardware and a local bone graft.  AR 415-16.  According to her doctor, she needed approximately 12 months of rehabilitation before she could return to work.  AR 414.  Plaintiff was released from the hospital four days later, with a discharge diagnosis of depression.  AR 418.

In November 2007, plaintiff's treating physician, Dr. David DeHart, sent the Department of Health & Family Services Disability Determination Bureau his assessment of plaintiff: she could not lift or carry any amount; she needed a cane for ambulation and could not push or pull. AR 594. In his opinion, plaintiff could stand and walk a maximum of 20 minutes a day and sit no more than 20 minutes a day, but she could alternate sitting and standing every 20 minutes. Id. AR 594. Plaintiff was found disabled on November 17, 2007.

In September 2009, neurosurgeon Mark Stevens reviewed plaintiff's MRI and found that "it actually looks pretty good." AR 860. He found her neurological examination normal and did not think any further surgery would be worth the risk it would present. Id. He noted that she had obtained some benefit from wearing a brace. Id.

On March 2012, Dr. DeHart completed a musculoskeletal impairment form on plaintiff's behalf, in which he listed chronic back pain, right rib pain and intermittent leg weakness. AR 684. He wrote that the condition was chronic and he expected it to last at least 12 months, that plaintiff experienced constant stabbing or aching pain in her mid thoracic spine and low back that he rated at about 6-10 out of a maximum of 10. Id. He identified positive clinical findings in her straight leg raising and MRI changes and thought her pain severe enough to interfere with her attention and concentration to perform even simple work tasks. Id. He reported that plaintiff was able to walk only one-half block without a rest or experiencing severe pain and that she could sit and stand for no more than five to ten minutes at a time. AR 686. In addition, plaintiff would need a cane for balance

4

for even occasional standing and walking and she had significant limitations with reaching, handling and fingering because of her thoracic spine pain.  AR 687.

Plaintiff saw Dr. DeHart at least eight times in 2013.  On February 1, she complained of back and hip pain and constipation, AR 910-11; DeHart prescribed nortriptyline for a week, to increase in the second week to twice a day and three times a day in the third week, AR 911, and refilled her oxycodone prescription and increased her MS-Contin to 60 mg, three times a day.  Id.  He endorsed her idea of seeing a chiropractor and told her that if that did not work, he wanted her to go to physical therapy or have a steroid injection.  Id.  On February 19, plaintiff saw Dr. DeHart again, after slipping on a sidewalk, when she was on her way to work as a substitute teacher.  He recommended ice for her elbow.  AR 907.

In March 2013, plaintiff had an EMG after she complained of numbness in both arms.  AR 869.  The results were normal in all respects.  Id.

On April 16, 2013, plaintiff saw DeHart for back pain and a refill of her oxycodone and morphine.  AR 904.  She told him she had been having more headaches in recent days and was working more often as a substitute teacher so that she could afford her medication co-pays.  Id.  DeHart noted her persistent back pain.  AR 905.  She returned on May 1, 2013, saying that she had a disability hearing coming up.  AR 902.  She reported continuing back pain, worsening headaches and episodes of falling when her leg gave out beneath her. Id.  DeHart found significant tenderness in her paraspinal muscles in her neck and in the trapezious muscles spreading out across both shoulders, as well as some generalized pain in the upper back, especially in the thoracic area but also in the lumbar region.  AR 903.  He

made no findings about her legs.

Plaintiff saw Dr. DeHart in June 2013, after her disability status had been discontinued.   AR 900.  She continued to complain of back pain, inability to sit for more than about 20 to 30 minutes, worsening left hip pain and carpal tunnel syndrome.  Id.  She saw him again on August 2, 2013, with complaints of lower back pain and urinary frequency.  AR 898.  DeHart noticed that it was "very difficult for her to get on the exam table."  AR 899.  He prescribed a refill of morphine and discussed the possibility of increasing the dosage if her back pain continued to worsen.  AR 899.

Plaintiff returned on August 19, with more pain in her hip.  AR 896.  DeHart noted that she had bilateral greater trochanteric bursitis, for which she had had injections previously.  AR 897.  On October 11, 2013, plaintiff complained of hip pain and worsening back pain.  AR 893.  She said she had been working two or three days as a school assistant and needed a day off for each day she worked.  She complained of burning pain in her mid back but said her lower back was bothering her as well and that she continued to fall when her legs gave way on her randomly.  Id.   DeHart noted some tenderness in her midthoracic area as well as in her lower lumbar area, as well as pain with straight leg raising.  AR 894.  He gave her an injection in each hip for her bilateral greater trochanteric bursitis.  Id.

2. Consulting physician

On September 7, 2011, the agency arranged for a consultative examination of plaintiff by Dr. Eric Boehmer.  AR 659.  On examination, he noted that plaintiff complained

6

of constant pain in her mid thoracic area, with some radiation down her spine or in her anterior chest if she tried to carry things.  She rated her pain as 7 or 8 out of 10, even with medication.  Id.  She reported being able to stand for only 10-15 minutes at a time before needing to sit and having to stand up again after 15 minutes of sitting.  She said she did not leave the house and could not sweep, vacuum or do laundry but spent her entire day watching television.  Id.  She told Boehmer she had tried physical therapy for two weeks but found that it worsened her pain.  Id.

In his post-examination report, Boehmer noted that plaintiff had driven 75 minutes to the appointment, with only one stop to pick up her sister, and that she did not mention having had any discomfort while driving.  Id.  After the examination ended, he watched her walk out of the building when she did not know she was being observed, and saw her "get into her white large vehicle . . . . She had a slightly antalgic gait throughout her walk out. She opened the vehicle driver's seat door and climbed up and bounced into the seat without any apparent difficulty."  AR 661.  In addition, he observed that plaintiff sat for 45 minutes in the examination room without needing to change positions, AR 660; and that he watched her get up onto the examination table with difficulty, wincing and moaning, although, as he noted, getting on the table was "certainly not a feat as difficult as getting into her car"; and that she was able to lean over to pick up her large purse from the floor without difficulty when she thought herself unobserved.  AR 661.

Boehmer found plaintiff tender in every location palpated with pressure "just enough to blanch the skin, regardless of whether along "spinal process, mm belly or insertion

[perhaps incision?]"  AR 661. She had a supple neck, normal upper extremity strength, negative straight leg raising and full range of motion, with a little difficulty in shoulder extension against resistance in the 90 degree abducted position.  Id.  He added that "She did have bizarre descriptions of her lumbar pain as radiating up her spine, which I have not encountered before."  AR 662.  Dr. Boehmer wrote that "there are reasons to doubt the veracity of [plaintiff's] description of her pain severity and localization" and that he had concerns about her sedentary life, her smoking and her large doses of narcotic medications. AR 662. He noted that she had participated in physical therapy for only two weeks.  Id.  He recommended she engage in a two-month trial of physical therapy, stop smoking and taper her narcotic medications.   Id.

3. Agency physicians

Agency physician Pat Chan reviewed plaintiff's medical records and prepared a report on September 15, 2011, in which he concluded from Dr. Boehmer's reports of his consultative examination of plaintiff that her current residual functional capacity was "Light, giving her the complete benefit of the doubt." AR 672.  In Chan's view, plaintiff could lift and carry 20 pounds occasionally, lift and carry 10 pounds frequently, stand or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and engage in unlimited pushing and pulling other than as limited by the lifting and carrying restrictions.  AR 666.  He found that plaintiff had no postural, environmental, visual, manipulative or communicative limitations.  AR 667-69.

8

A second agency physician, Dr. Mina Korshidi, filed a report on January 1, 2013, in which she concluded that plaintiff could work at a sedentary job. AR 789. Her assessments of plaintiff's work capacity mirrored those of Dr. Chan, except in two respects: Korshidi found that plaintiff would not be able to climb ladders, ropes or scaffolds more than occasionally, AR 784, and that she would have to avoid concentrated exposure to hazards. AR 786. Korshidi found Dr. DeHart's March 2012 treating source statement unsupported by the objective evidence, AR 788, and she noted that, with one exception, he mentioned no bruising or objective findings of leg weakness in any of his examinations that would support plaintiff's claims of repeated falls from her legs giving out or her complaints of severe pain. AR 789.

A state agency psychological consultant, Jack Spear, Ph.D., concluded in a January 2, 2013 psychiatric review that plaintiff had an affective disorder (depression) that was not severe, although it might give her mild difficulty in maintaining concentration, persistence and pace. AR 768-80. He did not view her depression as causing any difficulties with activities of daily living or social interaction. AR 778.

## C. Administrative Hearing

### 1. Plaintiff's testimony

At the administrative hearing on December 5, 2013, plaintiff testified that she lived in a two-story home in Eastman, Wisconsin. AR 45. She was married, she had completed the tenth grade, AR 46, and had no problems reading or understanding what she read or

with simple math.  She said she was a "fill-in substitute teacher" (it appears she may have meant substitute teacher's aide), and that she worked only on those days on which she was not experiencing pain.  AR 47.  In both jobs she had to lift up to 50 pounds.  AR AR 49-50. In addition, she had worked at the Bridgeport Inn, running the front desk, doing housekeeping and setting up breakfast, AR 51, and she had stocked shelves at Johnson's One-Stop Shopping, before returning to Cabela's, where she resumed order picking.  AR 52.

Plaintiff started her school substitute job two years before her hearing, AR 53, and was on call only for jobs that required less than a full day.  Id.  On a bad day, she stays in bed, either sitting up or lying down.  AR 54.

Plaintiff testified she could sit for no more than 15-20 minutes without having to get up and walk around to relieve the pain in her legs and back.  AR 55.  She was able to stand for no more than ten minutes.  Id.  Her school job allowed her to sit down whenever she needed to.  Id.  She felt her pain in the upper part of her back and in her lower back as well, going down into her legs, AR 62, and found it hard to use her cane because of her problems with her hands.  Id.

Plaintiff testified that she could not do her laundry because the washing machine is in the basement and she had fallen down the basement stairs on a number of occasions.  AR 56.  As a result, her husband did the laundry.  Id.  She no longer vacuumed and she did only about ten percent of the cooking because her hands tended to go to sleep and she had little strength in them.  AR 56-57. She had a cane with her at the hearing and told the administrative law judge that she had been using it for more than a year.  AR 57.  She

10

testified that she could not drive long distances by herself, AR 58, but could manage a long drive if she were a passenger and could move around at will.  AR 58-59.  By herself, she could drive for only about 11 miles before having to stop and move around.  AR 59.

In response to questioning by the administrative law judge, plaintiff said that she and her family went camping about once a month and that her husband did all the preparation and had even built her a ramp to help her get into the camper.  AR 63. She said she did not sit outside often on the camping trips, but mostly stayed in the camper lying down.  AR 64.  At home, she spent her days watching television.  AR 65.

## 2. Vocational expert

John Reiser testified at the hearing as a vocational expert.  AR 65.  He summarized plaintiff's past work at the hardware store as semi-skilled medium work, with the lifting she was required to do.  AR 66-67.  Her front desk work was light work, semi-skilled; her work at the Cabela distribution center was medium, semi-skilled.  AR 67.  With the limitations on sitting, standing and carrying weights of more than ten pounds, plaintiff would be unable to perform her past work.  AR 68.  However, Reiser identified a number of sedentary, entry level jobs in the state: production worker (4,000 in the region (the states of Wisconsin, Minnesota and Illinois)), appointment clerk or  information clerk (7,500 in the region) and general office clerk (4,500 in the region).  AR 69-70.  A person working in such a job could not be absent more than once a month.  If the person had to stand frequently and use a cane while standing, there would be only about 1000 jobs regionally as credit checker and perhaps

1,500 as protective service workers or surveillance-system monitor.  AR 72-73.

### D. Administrative Law Judge's Decision

In his decision, the administrative law judge went through each of the eight steps he was required to follow in assessing plaintiff's ability to engage in substantial gainful activity. (1) Plaintiff was not engaging in such activity at the time; AR 17; (2) she did not have an impairment that equaled a listing in the regulations, AR 18-20; (3) as of September 1, 2011, plaintiff had had a decrease in the medical severity of her impairment, AR 20; (4) her medical improvement was related to her ability to work, AR 22; (5) she continued to have a severe impairment or combination of impairments, 20 C.F.R. § 404.1594(f)(6), AR 23; (6) plaintiff had four severe and medically determinable impairments that limited her ability to work: degenerative disc disease, asthma, obesity and arthritis, (the administrative law judge noted plaintiff's other physical impairments, such as headaches, a deformity in her left heel, sleep apnea and possible carpal tunnel syndrome, but found that none met the definition of "severe," AR 17; (7) plaintiff was unable to perform her past relevant work, AR 31; and (8) she was able to perform a significant number of jobs in the national economy, AR 31-32.

Although plaintiff had been given a diagnosis of depression, id., the administrative law judge found that any depression she had was non-severe.  AR 18.  He based his decision on Dr. Spear's psychological report, AR 768-80, and on plaintiff's activities of daily living, which she described in her Function Report, AR 287-94, as including pet care, some meal preparation, helping with household chores, driving and shopping.  She reported getting

along well with friends, family, neighbors and authority figures and no problems with counting change, paying bills, managing a bank account or following written instructions. Id. In addition, the administrative law judge relied on statements submitted by plaintiff's sisters, in which they said nothing about her having any depression or problems with mental functioning. AR 308-09.

The administrative law judge found no evidence that any of plaintiff's impairments met a Social Security Listing of Impairments, that is, an impairment listed as severe in 20 C.F.R. Part 404, Subpart P, App. 1. AR 18-21. He noted that obesity does not have a Listing, but that he took the condition into consideration, particularly as it related to plaintiff's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day a week job. As he said, someone with arthritis affecting a weight-bearing joint who also is obese may have more pain and limitation than might be expected with someone who has only arthritis. AR 20. He concluded that although plaintiff continued to have a severe impairment or combination of impairments as of September 1, 2011, she had the residual functional capacity to lift and carry 10 pounds occasionally, less than 10 pounds frequently, stand and walk about four hours collectively and sit for about six hours collectively in an eight-hour work day. She could not climb ropes, ladders or scaffolds and was precluded from crawling. AR 23. She could occasionally operate foot controls with her lower extremities and could occasionally balance, stoop, crouch and climb ramps and stairs. She would need to avoid more than occasional exposure to extreme temperatures, vibration, humidity, fumes, dust, odors, gases and poor ventilation and any exposure to workplace

hazards.  Id.

In reaching his conclusion, the administrative law judge placed considerable weight on Dr. Boehmer's observations at his consultative examination of plaintiff, which included plaintiff's ability to sit comfortably during the entire 45-minute consultation without position changes, her ability to drive 75 to 90 minutes without a break, her apparent over-reaction to slight pressure on her back, her lack of focal tenderness to palpation in her lumbar region and her full active and passive range of motion of all extremities, with some difficulty on shoulder extension to resistance.  AR 23-24, citing AR 659-62.  He pointed out that Dr. Boehmer had noted that when plaintiff thought she was unobserved, she bent over to pick up a heavy purse off the floor with no difficulty and got into her large car with ease, and that Boehmer had said nothing about plaintiff's using a cane for ambulation.  AR 24.

In addition, the administrative law judge discussed an MRI of plaintiff's lumbar spine performed in December 2011 at Dr. DeHart's request.  AR 24.  Although plaintiff complained of significant pain in her lower back, hip and leg, the MRI results showed only mild degenerative disc disease at L5-S1, with a mild diffuse disc bulge and annular tear, mild degenerative facet arthropathy at L4-L5 and L5-S1 and no spinal canal or neural foraminal narrowing at S5-S1, L3-L4 or L4-L5.  Id., citing AR 840.

The administrative law judge discussed plaintiff's March 2013 evaluation for pain and numbness in both arms, noting that her EMG results were normal, with the exception of the left median antidromic sensory nerve conduction distal latency, which was shown to be at

the upper limits of normal.  AR 24-25, citing AR 869.  He discussed other visits to DeHart as well, but in the end, he gave only some weight to Dr. DeHart's opinions because he found little objective support for them in the doctor's treatment notes.  He noted that DeHart's March 2012 opinion "would essentially render [plaintiff] disabled from all work due to back pain, rib pain, intermittent leg weakness, and upper extremity pain and paresthesia," AR 29, but that his clinical notes contained minimal objective findings.  Id. Further, Dr. DeHart did not rely on any specific range of motion test results, motor strength test results, neurological examinations or results of gait assessments.  AR 29.  It was the administrative law judge's belief that Dr. DeHart's opinions were based largely on plaintiff's self-reports rather than on his own examination findings.  Id.  For example, although it appeared that Dr. DeHart believed plaintiff's reports of frequent falls from her legs giving out, nothing in his physical examinations showed that plaintiff had any leg weakness, leg numbness or coordination problems.  Id.  In addition, DeHart's opinion was not consistent with other medical evidence, particularly the assessment by Dr. Boehmer, or with the 2009 and 2011 MRI studies.  AR 29-30.  The first MRI study showed no evidence of thoracic spinal cord injury; the second showed only mild degenerative disc disease and mild degenerative facet arthropathy.  Id.  The administrative law judge pointed out that a treating physician may bring a bias to a disability evaluation, because he empathizes with the claimant or for other reasons.  AR 30.

In addition, the administrative law judge found that plaintiff was not entirely credible.  She had testified at her hearing that she attended school only as far as the tenth

grade, but stated on another occasion that she had completed high school and one year of college.  AR 111.  She testified that she went camping with her husband, but rarely went outside and generally spent all the time lying down in the camper.  The administrative law judge found it unlikely that plaintiff would drive to a campground on a regular basis only to spend time inside a camper when she had testified that her severe pain made it difficult for her to stay in one position for any extended period.  AR 28.  Also, he noted that she had told the disability hearing examiner in May 2013 that she worked 15 hours a week in five-hour shifts at a local school, but testified at her administrative hearing that she worked at the school only one day a week for four to five hours.  Id.

Despite his concerns about plaintiff's credibility, the administrative law judge found her unable to perform her past relevant work.  AR 31.  However, he concluded that she could handle sedentary work, with limitations with restrictions on climbing, crawling, stooping, balancing and crouching, as well as only occasional exposure to pulmonary irritants, with an additional limitation to frequent bilateral handling.  AR 30.  Even with these limitations, plaintiff could perform a significant number of jobs in the national economy, id., such as production worker, information clerk/appointment clerk or general office clerk.  AR 32. Finally, he determined that plaintiff had not been disabled since September 2011.

OPINION

In this case, the administrative law judge's task was to determine whether the

16

commissioner acted correctly in determining that plaintiff no longer met the disability requirements of the Social Security Act and had not met them since September 2011. Plaintiff contends that he erred in this regard, but the record does not support her contention.

1. Dr. DeHart's reports

As a general rule, an administrative law judge is to give controlling weight to the opinions of treating physicians, so long as they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527.   In this case, the administrative law judge did not give controlling weight to the opinions of plaintiff's primary physician, Dr. DeHart, because he found that those opinions were not supported by the medical evidence. Plaintiff challenges this finding, citing Herrmann v. Colvin, 772 F.3d 1110 (7th Cir. 2014). In Herrmann, the Court of Appeals for the Seventh Circuit reversed a decision by an administrative law judge who gave only a garbled explanation of his reasons for rejecting the opinion of the claimant's treating physician and "brushed off" the opinions of the consulting physicians.  Id. at 1111-12.

Herrmann is readily distinguishable from this case, in which the administrative law judge gave a thorough and reasoned explanation for his rejection of the opinions of plaintiff's treating physician and in which all of the other doctors who examined plaintiff or reviewed her medical records found the treating doctor's opinions unsupported by his treatment notes

17

and observations. <u>Hofslien v. Barnhart</u>, 439 F.3d 375, 376 (7th Cir. 2006) ("[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight").

In this case, the administrative law judge explained in detail why he was not adopting Dr. DeHart's assessment:  not only was it in direct contrast to the observations of the consulting examiner, Dr. Boehmer, AR 22, but it was unsupported by DeHart's own treatment notes.  AR 29.  DeHart's assessment of plaintiff's severe pain and degree of limitation was not supported by plaintiff's December 2001 MRI study, AR 24, or by her March 2013 EMG study, AR 24-25, citing AR 869.  His diagnosis of asthma was unsupported by his physical examinations, which showed that her lungs were clear, AR 905, and by the lack of any respiratory function tests.  <u>Id</u>.

It is certainly possible that plaintiff had migraine headaches, but her MRI brain scan showed no abnormalities that might cause such headaches, AR 823.  The lack of any acute findings in her right knee did not support plaintiff's reports of falling frequently, AR 848.  Finally, DeHart diagnosed depression in plaintiff, although his medical notes lacked any mental status examination findings, AR 17, citing AR 708, whereas Dr. Spear had concluded that plaintiff's depression was mild and caused her no difficulty with the activities of daily living.  AR 18, citing AR 768-80.  In addition, the administrative law judge took into consideration the full array of daily activities that plaintiff had described in her Function Report that were inconsistent with disabling depression and her sisters's failure to mention in their agency statements any symptoms related to depression or any difficulty associated

18

with mental functioning.  Id.

In the absence of independent support for Dr. DeHart's opinions about plaintiff's physical abilities, the administrative law judge was justified in giving more weight to the opinions of the consulting physician, Dr. Boehmer, and the two agency physicians who evaluated plaintiff's physical condition.  Moreover, the administrative law judge did not discount Dr. DeHart's opinions altogether.  For example, he rejected Dr. Chan's opinion that plaintiff could work at the light exertional level, finding instead that plaintiff could do only sedentary work and only with additional limitations.  Even after rejecting that opinion, however, the evidence supported his conclusion that plaintiff could work full-time at a sedentary job, with certain limitations.

2. Plaintiff's credibility

Plaintiff objects to the administrative law judge's finding that she was not entirely credible.  That finding was well supported by the facts, but it did not prevent the administrative law judge from giving some credence to plaintiff's reports of pain or from finding in her favor that she could no longer perform her past relevant work and assigning her a restricted residual functional capacity of limited sedentary work.  AR 32.

Plaintiff asserts that an administrative law judge cannot "discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results," Plt.'s Br., dkt. #9, at 32, but the administrative law judge did not reject her credibility entirely.  Had he done so, he would not have found that she was

19

limited to working only a limited range of sedentary work.  AR 32.

Plaintiff contends that her heavy use of pain medication supports her credibility, a proposition for which she cites Schomas v. Colvin, 732 F.3d 702 (7th Cir. 2013).  She seems to think that Schomas should be read as holding that no doctor would prescribe large amounts of pain medication unless the doctor believed that the patient's pain required it. In Schomas, however, the court considered whether the claimant's use of medication affected him mentally and physically, id. at 709, and also speculated whether a person who "was prescribed narcotic pain relievers, submitted to steroid injections, and finally underwent major surgery," could be said to have been treated conservatively.   Id.  In this case, the significance of Dr. DeHart's heavy prescription of pain medication depends on the accuracy of his assessment of plaintiff's need for the medication.  In and of itself, the continued prescription of pain medication proves nothing about plaintiff's credibility.  It is unnecessary to resolve this point entirely, however, because the administrative law judge did not ignore plaintiff's use of pain medication altogether; had he done so he might have assessed plaintiff capable of light work, not just sedentary.

The court of appeals has noted the difficulty of evaluating a claimant's reports of pain.  In Sims v. Barnhart, 442 F3d 536, 537-38 (7th Cir. 2006), the court wrote:

The problem of proof arises when the symptoms are reported by the claimant but not verified by medical experts. The classic example is pain. Its existence cannot be verified, and since a person can experience intense, disabling pain even though no physical cause can be found, there is great difficulty in determining whether the person really is experiencing the pain that he reports. In such a case, the administrative law judge must of necessity base [his] decision on the credibility of the claimant's testimony. Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying. Only if the trier of fact grounds his credibility finding in an observation or

argument that is unreasonable or unsupported, as in <u>Zurawski v. Halter</u>, 245 F.3d 881, 887–88 (7th Cir. 2001), can the finding be reversed. <u>E.g.</u>, <u>Pelkey v. Barnhart</u>, 433 F.3d 575, 578 (8th Cir. 2006); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958–59 (9th Cir. 2002).

<u>See also</u> <u>Jones v. Astrue</u>, 623 F.3d 1155, 1161 (7th Cir. 2010) ("Although an [administrative law judge] may not ignore a claimant's subjective reports of pain simply because they are not supported by the medical evidence, discrepancies between the objective evidence and self-reports may suggest symptom exaggeration."); <u>Simila v. Astrue</u>, 573 F.3d 503, 518-19 (7th Cir. 2009) (although an administrative law judge cannot deny disability for the sole reason that the available medical evidence does not support the claimant's statements, he is not prohibited from considering the absence of such evidence, along with other factors).  Here, the administrative law judge provided a reasonable explanation for his credibility findings and those findings are supported by facts in the record.  Accordingly, there is no basis on which to reverse those findings.

3. <u>Plaintiff's non-severe impairments</u>

Plaintiff contends that the administrative law judge should have considered the combined effects of all of her medically determinable impairments, whether severe or not, and specifically, should have considered her mild difficulty in concentration, persistence and pace when assessing her residual functional capacity.  In fact, as shown in pages 17-18 of his decision, the administrative law judge did take all of this into consideration when he decided plaintiff could perform limited sedentary work.  Nevertheless, he gave "great weight" to Dr. Spear's report, along with plaintiff's own Function Report and its listing of the many

activities in which plaintiff engages, her ability to get along with family, friends, neighbors and authority figures and her lack of problems with counting change, managing basic bank accounts and following written or spoken instructions.  Her only area of difficulty was reacting to stress or change and that was rated as merely "mild."  The administrative law judge did not err in giving little weight to plaintiff's mild difficulty, given the nature of the work he found her capable of performing.

In summary, I conclude that the administrative law judge had substantial evidence on which to base his conclusion that as of September 1, 2011, plaintiff was no longer disabled.

ORDER

IT IS ORDERED that plaintiff Brenda Lee Kleven's motion for summary judgment, dkt. #8, is DENIED and the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, finding plaintiff no longer disabled as of September 1,

2011, is AFFIRMED.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 1st day of December, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge